# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA     *        CRIMINAL NO. 09-374

VERSUS                         *

GREGORY MEFFERT, ET AL.       *        SECTION "L"

## ORDER

## I.    BACKGROUND

From May 5, 2002 to July 15, 2006, Defendant Gregory Meffert ("Mr. Meffert") served as a public official with the City of New Orleans in his capacity as the Chief Technology Officer ("CTO") and Executive Assistant to the Mayor. In this role as a public official and agent of the City of New Orleans, Mr. Meffert was allegedly responsible for staffing, managing, and controlling the Mayor's Office of Technology ("MOT") and the Management Information Systems ("MIS") department for the City of New Orleans. Additionally, the Government contends that as a department head for the City of New Orleans, Mr. Meffert was responsible for the supervision and performance of contract labor assigned to the MOT and MIS divisions of the City of New Orleans.

On November 6, 2009, a Grand Jury returned a 63-Count Indictment against Mr. Meffert, his wife, Linda Meffert ("Mrs. Meffert") and one of their associates, Mark St. Pierre ("St. Pierrre"). St. Pierre was the owner and/or partner of a number of New Orleans based technology companies. Prior to Mr. Meffert's tenure at the Mayor's office, Mr. Meffert and St. Pierre had worked closely together. The Indictment charges that the Defendants conspired to engage in acts of fraud, bribery, and money laundering, in violation of various federal statutes. In addition the

Indictment alleges that Mr. and Mrs. Meffert willfully engaged in tax evasion and made false statements to a federal agent. Finally, the Indictment alleges that certain property - the proceeds of the charged conduct - is subject to forfeiture.

According to the Indictment, as part of an alleged scheme and artifice to defraud, Mr. Meffert used his power and influence as the CTO and MOT to provide millions of dollars of funds from the City of New Orleans to St. Pierre and others through arrangements where St. Pierre was selected without ever participating in any competitive bid process. Further, the Indictment charges that Mr. Meffert, as the CTO, manipulated the procurement process to guarantee "no bid" work for St. Pierre by directing prime contractors to hire and contract with him, thereby ensuring that St. Pierre received "no bid" work from the City of New Orleans. These prime contractors did not manage, supervise, direct or control St. Pierre, but only served as a conduit for invoices and payments related to St. Pierre's "no bid" work for the City of New Orleans. Rather these prime contractors acted as a "billing mechanism" for St. Pierre. Furthermore, the Indictment asserts that Mr. Meffert failed to disclose his conflict of interest concerning St. Pierre.

Additionally, the Indictment contains allegations that Mr. Meffert arranged and directed the purchase of "crime cameras" for the City of New Orleans through the use of a procurement vehicle in which St. Pierre purchased cameras from an out-of-state manufacturer, and then resold them to Dell, Inc., who then resold them to the City of New Orleans for St. Pierre to install. This process allowed St. Pierre to sell and install cameras for the City of New Orleans without having to participate in a bid process open to the public.

In return for his "no bid" work, St. Pierre allegedly made various payoffs to Mr. And Mrs. Meffert in a number of ways. One payoff method was via an American Express card,

where the Mefferts charged approximately $130,954.70. Further, the Indictment alleges that St. Pierre paid membership dues in a Mardi Gras parade for Mr. Meffert, paid for certain household expenses (approx. $35,000) for the Mefferts' residence, and paid direct deposits and checks to both Mr. Meffert ($647,426.25) and Mrs. Meffert ($38,000). In addition, Mr. Meffert allegedly agreed to accept items in excess of $860,000 from St. Pierre. Finally, the Indictment alleged that St. Pierre disguised the flow of these payoffs to Defendants through the use of multiple corporate identities, multiple bank accounts and multiple payment means. All Defendants allegedly participated in concealing the payoffs.

On May 7, 2010, a Grand Jury returned a Superseding Indictment against the Defendants. The Superseding Indictment is substantially similar to the original Indictment, but it differs in the following respects: (1) the Superseding Indictment contains a description of Defendants' house, which is allegedly subject to forfeiture; and (2) the Superseding Indictment, in Counts 2 and 3, charges that the Defendants acted "corruptly" in their bribery scheme.

## II.    LAW & ANALYSIS

There are currently 14 motions pending before the Court, all of which were filed by Gregory and Linda Meffert and subsequently adopted by Mark St. Pierre.[1] These motions request various forms of relief, including dismissal of the indictment or of certain counts of the indictment, an evidentiary hearing, severance of certain counts of the indictment, striking of certain language contained in the indictment, and bifurcation of the forfeiture proceedings. For the following reasons, IT IS ORDERED that these motions are DENIED.

---

[1]For the most part, the motions were filed prior to the return of the Superseding Indictment. Pursuant to Defendants' request at oral argument, the Court will construe Defendants' motions as challenges to the Superseding Indictment, which represents the current charges against the Defendants.

A.      **Motions to Dismiss**

    i)      **Motion To Dismiss Indictment and Request for an Evidentiary
            Hearing (Rec. Doc. 36)**

Defendants first argue that this Court should conduct an evidentiary hearing and

subsequently dismiss the indictment in its entirety based on an alleged pre-Indictment leak of

grand jury information to the media from an attorney for the Government.  This argument is

based primarily on an article that appeared on the New Orleans Times-Picayune's website,

nola.com, on the morning of the indictment, November 6, 2009, at 8:30 a.m.  The article

indicated that "sources" had alerted the newspaper to "federal prosecutors plan to ask a grand

jury meeting this morning to indict former city technology chief Greg Meffert, his wife, Linda

Meffert, and his former friend and business associate Mark St. Pierre."  The article further

indicated that U.S. Attorney Jim Letten had announced a news conference for later in the day to

discuss developments in an unspecified public corruption investigation.  Additionally,

Defendants point to an email written by the author of the nola.com article and sent to Mr.

Meffert's attorney that indicated that "[w]e're hearing it's a go for tomorrow and we're getting

close to being able to put it in the paper."  This email was sent on November 5, 2009, at 2:48

p.m.  Defendants assert that the "sources" referenced in the article could only be government

attorneys and that the release of this information prior to the grand jury proceedings was

prejudicial to the Defendants.

        The Government takes the position that dismissal of an indictment is an overly harsh

remedy for a breach of secrecy, and the Defendants' burden is high when making such an

argument.  They argue that an evidentiary hearing is unnecessary because Defendants have failed

to make the necessary prima facie showing that the government was responsible for the

disclosure or that the Defendants were substantially prejudiced.  They also point out that, as

early as August of 2009, Mr. Meffert's attorney had compromised the secrecy of the grand jury proceedings when he informed the local media that Mr. Meffert was under investigation by the federal government.

Both the Fifth Circuit and the Supreme Court have emphasized the importance of maintaining secrecy in grand jury proceedings. *United States v. Lance*, 610 F.2d 202, 213 (5th Cir. 1980) (citing *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211 (1979); *United States v. Proctor & Gamble Co.*, 356 U.S. 677 (1958)). Rule 6(e)(2)(B) of the Federal Rules of Criminal Procedure provides that "an attorney for the government . . . must not disclose a matter occurring before the grand jury." Red. R. Crim. P. 6(e)(2)(B).

Additionally, the Fifth Circuit has explained that, when determining whether a party has made a prima facie showing of a Rule 6 violation, the Court should consider several factors. First, it must be clear that the article clearly "disclose[d] information about 'matters occurring before the grand jury.'" *Lance*, 610 F.2d at 216. Statements regarding the date or time that an indictment will be returned by the grand jury satisfy this requirement, but an attorney's recommendation that an indictment be sought does not. *Id.* at 216-17. Second, it must be apparent from the article that the source of the information divulged was one listed in Rule 6(e)(2)(B), such as a government attorney. The article need not specify that a government attorney was, in fact, the source of the information where the nature of the information supplied was of the sort that implicates the government attorneys. *Id.* at 218. Further, where an affidavit denying allegations of improper disclosure is submitted, a defendant may be unable to establish a prima facie case.[2] *Id.* Third, the Court should assume that the article's statements are accurate.

_____

[2]Such an affidavit will not be fatal to the Defendants' argument, however, depending upon the seriousness of the allegations being asserted.

*Id.* at 219.  Fourth, the Court must consider the relief requested by the Defendants.  *Id.*  Where, as here, dismissal of the indictment is the requested relief, the Defendant "bears a heavy burden in attempting to justify such relief."  *Id.* at 219.  Finally, the Court must take into account the evidence presented by the Government that contradicts the Defendant's allegations.  *Id.* at 219-20.  In most cases, the Government submits an affidavit denying any improper disclosure.[3]  *Id.*

In *Lance*, the Fifth Circuit reversed the district court's decision to deny a Defendant's request for an evidentiary hearing and motion for contempt sanctions based on allegations of numerous disclosures regarding grand jury proceedings.  *Id.* at 207-212.  Notably, the Government did not submit an affidavit denying improper disclosure.  *Id.* at 221.  As the Court explained:

> Examining all of the materials presented to the district court as a whole, we conclude that Lance made a sufficient prima facie showing of a violation of Rule 6(e) to warrant an evidentiary hearing in the absence of any affidavit by the Justice Department attorneys denying that they, their associates, or their superiors divulged the information appearing in the newspaper articles.  Other courts have found affidavits of denial by the responsible government officials sufficient to counter any allegations of improper conduct under Rule 6(e); yet the relief sought in those cases was not contempt sanctions but a serious interference with the grand jury process.  We leave for decision after a factual analysis by the district court the question whether the showing made by Lance would still warrant an evidentiary hearing even if a responsive affidavit should be filed by government counsel.

*Id.* at 220-21.  Although the Court did not answer the question of whether an evidentiary hearing

---

[3]For example, in *United States v. Jefferson*, Case No. 08-85, the Court denied the Defendant's Motion to Dismiss and Request for an Evidentiary Hearing without holding a hearing where the Government had filed an affidavit denying that they were responsible for the statements made in a pre-indictment article on nola.com. *Jefferson*, Rec. Doc. 88 and Rec. Doc. 77.  The Court reasoned that much of the information was already in the public domain. *Jefferson*, Rec. Doc. 88, at 4.  Further, the Court reasoned that "Defendant has made no showing that the posting which contained information already in the public domain caused prejudice and bias in the grand jurors, or that the indictment returned was a result of essential unfairness caused by the posting."  *Id.* at 5.

would have been warranted if the requested sanctions had been dismissal of the indictment, this analysis is nonetheless instructive here.

In this case, Defendants have moved for dismissal of the indictment in its entirety, and not the type of sanctions that were sought in *Lance*.  Accordingly, they face a heavy burden, which they have failed to meet.  Although the Government has not submitted an affidavit denying that they leaked the information, they state in their brief that "the United States Attorney's Office did respond to the defense's leak allegation.  However, the United States Attorney's Office determined there was an insufficient basis to do more than a preliminary inquiry of knowledgeable staff.  This inquiry confirmed no one leaked anything to the press." *United States Response to Defendants Linda Meffert and Gregory Meffert's Motion to Dismiss the Indictment and a Request for an Evidentiary Hearing and Incorporated Memorandum of Law*, Rec. Doc. 84, at 11-12 n.19 (May 12, 2010).  This brief is signed by Assistant United States Attorney Richard R. Pickens, II.  Furthermore, in their brief, the Government suggests that defense counsel may have been responsible for the disclosure.   Considering these statements, as well as the ambiguous nature of the nola.com article, Defendants have failed to make a particularized showing that the "sources" responsible for the leak were government attorneys.

Furthermore, Defendants have failed to make a particularized showing that they have been substantially prejudiced by this disclosure.  This is highlighted by the fact that counsel for Gregory Meffert was revealing information regarding the grand jury proceedings months before an indictment was returned and that most of the information contained in the article was already in the public domain.  Because the Defendants have failed to make a prima facie showing of a prejudicial government leak, no evidentiary hearing is necessary.  Defendants' motion IS DENIED.

### ii) Motion to Dismiss Count(s) 1 of the Indictment on Grounds of Duplicity (Rec. Doc. 52)

Next, Defendants take the position that Count One of the Superseding Indictment should be dismissed because it charges the Defendants with multiple conspiracies in a single count. Defendants argue that the allegations in Count 1 refer to a variety of different payments to and from different accounts and for different purposes. They argue that there is no coherent connection between these acts, other than the fact that the same people were allegedly involved. According to the Defendants, this connection is not enough to demonstrate that all of the acts were part of an integrated scheme. The government, on the other hand, argues that only one conspiracy existed during the relevant period and that this single conspiracy had multiple objects. "An indictment may be duplicitous if it joins in a single count two or more distinct offenses." *United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 608 (5th Cir. 1991). If an indictment is duplicitous and the defendant is prejudiced as a result, a conviction obtained on the indictment may be subject to reversal. *United States v. Sharpe*, 193 F.3d 852, 870 (5th Cir. 1999). When examining an indictment for duplicity, the Fifth Circuit distinguishes between "acts" and "offenses." The government may include more than one "act" within a single count when those acts represent a single, continuing scheme and when 1) the indictment adequately notifies the defendant of the charges pending; 2) does not subject the defendant to double jeopardy; 3) does not permit prejudicial evidentiary rulings at trial; and 4) does not allow the defendants to be convicted by a single, non-unanimous verdict. *Id.* (citing *United States v. Fisher*, 106 F.3d 622, 632 (5th Cir. 1997)). In distinguishing between a single conspiracy and multiple conspiracies, the Fifth Circuit examines the following elements: 1) the time period involved; 2) the persons acting as co-conspirators; 3) the statutory offenses charged in the indictment; 4) the nature and scope of the criminal activity; and 5) the places where the events

alleged as the conspiracy took place. *United States v. Lokey*, 945 F.2d 825, 833 (5th Cir. 1991) (citations omitted).

Based on the allegations in the indictment, this case involves a single conspiracy. Turning now to the factors stated in *Lokey*, Count 1 of the Superseding Indictment alleges that the Defendants engaged in a single conspiracy to defraud the people of New Orleans out of honest services. Although the Defendants used various corporate entities to disguise the payments being made, the nature and scope of all of the alleged activities was similar - it was activity intended to benefit the Defendants at the expense of the city of New Orleans. Furthermore, all of the various acts occurred within the alleged time period, which extended from 2002 until the date of indictment. Furthermore, the acts were all undertaken by the named Defendants throughout the City of New Orleans. Thus, Count 1 is not duplicitous and this motion IS DENIED.

### iii) Motion to Dismiss Count 3 of the Indictment Because there is no Nexus Between the Alleged Bribery and Federal Funds (Rec. Doc. 61)

Defendants next ask this Court to dismiss Count 3 of the Superseding Indictment, which charges the Defendants with violations of 18 U.S.C. § 666, because it does not contain any allegation that the bribery funds were connected to the federal funds received by the City of New Orleans.[4] The Government has responded and asserts that the purpose of § 666 is to preserve the integrity of those organizations that are funded, in part or in whole, by the federal government, that the statute does not require a connection between the bribery and federal funds, and that the

---

[4]Count 2 of this Superseding Indictment contains related allegations against Mark St. Pierre for giving, offering and agreeing to give a thing of value to any person with the intent to influence and reward, in violation of 18 U.S.C. § 666(a)(2). Counts 2 and 3 relate to the same transaction - the giving and receiving of a $38,000 check from Mark St. Pierre to the Mefferts. Thus, the analysis is the same for each count and St. Pierre has adopted the Meffert's motion to dismiss as it pertains to the allegations against him in Count 2.

Supreme Court has upheld the statute as constitutional.

18 U.S.C. § 666 "prohibits theft and bribery by officials of state and local agencies that receive federal funds." *United States v. Marmolejo*, 89 F.3d 1185, 1188 (5th Cir. 1996). Specifically, the statute makes it a crime to:

> corruptly solicit[] or demand[] for any person, or [to] accept[] or agree[] to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more.

18 U.S.C. § 666(a)(1)(B). The statute covers only those "organization[s], government[s] or agenc[ies]" that "receive[], in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance." 18 U.S.C. § 666(b). Thus, on its face, § 666 does not require that the bribery be specifically linked to the federal funds received by the organization, government or agency.

Nonetheless, the Defendants take the position that § 666 "was not intended to extend to cases where there is no federal nexus." *Memorandum in Support of the Motion to Dismiss Count 3 of the Indictment Because There Is No Nexus Between the Alleged Bribery and Federal Funds*, Rec. Doc. 61, at 2-3. However, the Supreme Court has upheld the constitutionality of § 666 and recognized that the statute does not require any connection between the bribery and the federal funds. See *Sabri v. United States*, 541 U.S. 600, 605-06 (1941); *see also Salinas v. United States*, 522 U.S. 52, 56-60. The Court, in *Salinas*, affirmed the Fifth Circuit's decision in the *Marmoleho* case, which upheld the conviction of a local sheriff and his deputy who had accepted bribes from a federal prisoner in exchange for allowing him conjugal visits. *Marmolejo*, 89 F.3d at 1188. The Supreme Court pointed to the clear statutory language of § 666, as well as the history and legislative intent underlying the statute in holding that "[t]he text of § 666(a)(1)(B) is

unambiguous . . . and it does not require the Government to prove federal funds were involved in the bribery transaction.  Furthermore, there is no serious doubt about the constitutionality of § 666(a)(1)(B) as applied to the facts of this case." *Salinas*, 522 U.S. at 60.

Similarly, the Fifth Circuit has clearly "held that § 666(a)(1)(B) does not require the government to prove that federal funds were directly involved in a bribery transaction, or that the federal monies funded the corrupt transaction." *Marmolejo*, 89 F.3d at 1191 (citing *United States v. Westmoreland*, 841 F.2d 572, 578 (5th Cir. 1988)).  In *Westmoreland*, the Fifth Circuit upheld a § 666 conviction of a county supervisor who accepted bribes during the purchase of county materials, which involved only state funds.  *Westmoreland*, 841 F.2d at 573.  The Court noted that Congress had acted with the "intent to preserve the integrity of federal funds" by "enacting a criminal statute that would eliminate the need to trace the flow of federal monies and that would avoid inconsistencies caused by the different ways that various federal programs disburse funds and control their administration." *Id.* at 577.  Further, they explained that "Congress has cast a broad net to encompass local officials who may administer federal funds, regardless of whether they actually do." *Id.*

The case law on this point is clear and the Court will not vary from established Fifth Circuit and Supreme Court precedent.  The Government need not prove that the funds of the alleged bribery scheme in this case were somehow connected to the federal funding provided to the City of New Orleans.  Instead, they need only prove that the City of New Orleans "receive[], in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance." 18 U.S.C. § 666(b).  This allegation is clearly contained in the Superseding Indictment.  Accordingly, Defendants' motion IS DENIED.

iv)     **Motion to Dismiss Count 3 on Statute of Limitations Grounds (Rec. Doc. 50)**

Defendants argue that Count 3 of the indictment should be dismissed because the indictment was returned after the five year statute of limitations for substantive crimes, which is applicable to Count 3, had expired.[5]  Count 3 charges that:

> On or about November 9, 2004, in the Eastern District of Louisiana, defendant Gregory Meffert, an agent of the City of New Orleans, a municipality which received federal benefits in excess of $10,000 in a one-year period, and defendant Linda Meffert, did corruptly accept and agree to accept, anything of value from any person, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of the City of New Orleans involving anything of value of $5,000 or more, that is, defendants Gregory Meffert and Linda Meffert accepted and agreed to accept a payoff via a check in the amount of $38,000.00 from Mark St. Pierre, in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

18 U.S.C. § 666(a)(1)(B) and (a)(2) make it a crime to corruptly give, offer, agree to give, solicit, demand, accept or agree to accept anything worth $5,000 or more, from any person, with the intent to be influenced or rewarded in connection with government business or transactions.  The statute of limitations begins to run when the crime is complete and all of the elements of the crime have been established.  *United States v. Yashar*, 166 F.3d 873, 879-80 (7th Cir. 1999).  The indictment in this case was returned on November 6, 2009.

Defendants argue that the crime charged in Count 3, as charged, would have been complete when the check was tendered - October of 2004 - or, at the latest, when the check was deposited, which they assert was November 3 or 4, 2004.  Both of these dates were more than

---

[5]Count 2 of this Superseding Indictment contains related allegations against Mark St. Pierre for giving, offering and agreeing to give a thing of value to any person with the intent to influence and reward, in violation of 18 U.S.C. § 666(a)(2).  Counts 2 and Count 3 relate to the same transaction - the giving and receiving of a $38,000 check from Mark St. Pierre to the Mefferts.  Thus, the statute of limitations analysis is the same and St. Pierre has adopted the Meffert's motion to dismiss as it pertains to the allegations against him in Count 2.

five years prior to the return of the indictment. However, the Government has presented

evidence that the $38,000 check referenced in Count 3 was processed by the bank, and thus

received by the Defendants, on November 9, 2004. Additionally, they assert that Mrs. Meffert

actually deposited the check on November 6, 2004. Both of these dates are less than five years

prior to the return of the indictment. Clearly, this issue is factually pregnant. The Superseding

Indictment, as charged, contains allegations that the crime charged in Count 3 was completed

within the relevant time period for the purpose of the statute of limitations. The Government is

therefore entitled to have an opportunity to prove these allegations at trial. Defendants' motion

IS DENIED.

      **v)**      **Motion to Dismiss Count Three For Failure to Allege Scienter (Rec. Doc. 58)**

Defendants next argue that Count 3 of the Indictment is deficient and must be dismissed

because it fails to allege that the Defendants acted "corruptly." Count 3 charges the Meffert

Defendants with accepting and agreeing to accept a $38,000 check from Mark St. Pierre, in

violation of 18 U.S.C. § 666.[6] Under this statute, "corruptly" is the requisite level of intent. The

Government has responded and takes the position that the Indictment must be construed liberally

and, when read as a whole, was sufficient to put the Defendants on notice of the elements of the

crimes with which they are charged as well as the factual allegations that support those charges.

They further argue that even if the original Indictment was insufficient, the Superseding

Indictment alleges that the Defendants acted "corruptly" and "intending to be influenced" and

---

[6]Count 2 of this Superseding Indictment contains related allegations against Mark St. Pierre for giving, offering and agreeing to give a thing of value to any person with the intent to influence and reward, in violation of 18 U.S.C. § 666(a)(2). Counts 2 and Count 3 relate to the same transaction - the giving and receiving of a $38,000 check from Mark St. Pierre to the Mefferts. Thus, the scienter analysis is the same and St. Pierre has adopted the Meffert's motion to dismiss as it pertains to the allegations against him in Count 2.

that this motion is therefore mooted.

Rule 7 of the Federal Rules of Criminal Procedure, which governs the sufficiency of an indictment, provides that an "indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . .  A count may incorporate by reference an allegation made in another count."  While the failure to allege an element of a crime may be fatal to the sufficiency of an indictment, the Fifth Circuit has explained that the Court should view the indictment in its entirety to determine whether the knowledge element may be inferred from the allegations.  *United States v. Henry*, 288 F.3d 657, 661-62 (5th Cir. 2002).

In this case, Count 3 of the original Indictment did not contain the word "corruptly." However, Count 3 did contain a reference to 18 U.S.C. § 666. Further, the Superseding Indictment clearly contains the necessary language to put the Defendants on notice of the elements of the charges against them.  Therefore, the Defendants' motion IS DENIED AS MOOT.

**vi)    Motion to Dismiss Counts Four Through Twenty-Seven of the Superseding Indictment for Failure to Allege Scienter (Rec. Doc. 54)**

Defendants next argue that Counts 4-27 of the Superseding Indictment, which charge the Defendants with wire fraud, are deficient and must be dismissed because they do not allege that the Defendants acted knowingly and/or willfully as required by 18 U.S.C. §§ 1343 and 1346. The Government has responded and takes the position that the Superseding Indictment must be construed liberally and, when read as a whole, is sufficient to put the Defendants on notice of the elements of the crimes with which they are charged as well as the factual allegations that support those charges.

Rule 7 of the Federal Rules of Criminal Procedure, which governs the sufficiency of an indictment, provides that an "indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . . A count may incorporate by reference an allegation made in another count." While the failure to allege an element of a crime may be fatal to the sufficiency of an indictment, the Fifth Circuit has explained that the Court should view the indictment in its entirety to determine whether the knowledge element may be inferred from the allegations. *Henry*, 288 F.3d at 661-62.

In this case, it is clear that Counts 4-27 of the Superseding Indictment do not include a specific allegation that the Defendants acted knowingly or willfully. However, Counts 4-27 do contain a reference to 18 U.S.C. §§ 1343 and 1346. Additionally, these Counts assert that the wire fraud was carried out "for the purpose of executing the scheme and artifice [to defraud] as described in Count 1, Section B." Count 1, Section B alleges that the Defendants "knowingly devised and intended to devise a scheme and artifice to defraud the city of New Orleans and its citizens." Although Count 1, Section B is not expressly incorporated by reference into Counts 4-27, its mention is certainly sufficient to put the Defendants on notice of the elements of the crime with which they are charged. Additionally, the reference to the statute within the Superseding Indictment further supports the sufficiency of the Superseding Indictment. Read in its entirety, the Superseding Indictment, and Counts 4-27 in particular, sufficiently allege wire fraud. Accordingly, the Defendants' motion IS DENIED.

> **vii)** **Motion to Dismiss Counts 1-60 of the Indictment on Grounds of Vagueness (Rec. Doc. 57) and Motion to Dismiss Counts 1-60 for Failure to State a Proper Honest Services Crime and for Vagueness As Applied (Rec. Doc. 51)**

The Defendants next argue that Counts 1-60 of the Superseding Indictment should be dismissed because the statutory basis for the charges contained therein, 18 U.S.C. § 1346, is

unconstitutional.  They claim that the statute is unconstitutionally vague on its face, unconstitutionally vague as applied to them, that it impermissibly creates a common law crime, and that it violates the separation of powers doctrine.  Additionally, they allege that Fifth Circuit case law regarding § 1346 has improperly made state law the basis for a violation of the federal criminal statute.  Further, at oral argument, the Defendants took the position that under the Government's reading of § 1346, a secretary could be subjected to criminal penalties for accepting bribes in exchange for performing certain ministerial tasks, and that this reading is overly broad.  The Government has responded and first points out that only Counts 1 and 4-27 of the Superseding Indictment deal with "honest services" violations.  Additionally, they argue that the case law clearly provides notice to defendants about exactly what conduct is criminalized and that the alleged conduct in this case is clearly the type that is punishable pursuant to § 1346. Further, they take the position that precedent clearly indicates that § 1346 is constitutional.

An honest services violation is one type of wire fraud.  *United States v. Brown*, 459 F.3d 509, 518-19 (5th Cir. 2006).  In order to prove wire fraud, the Government must prove: "(1) the formation of a scheme or artifice to defraud; (2) use of the wires in furtherance of the scheme;" and (3) a specific intent to defraud.  *Id.*   Section 1346 is implicated where the object of the wire fraud is to "deprive another of the intangible right of honest services." 18 U.S.C. § 1346.  "The paradigmatic cases of honest-services fraud . . . are bribery and self-dealing."  *United States v. Brumley*, 116 F.3d at 734.

The Fifth Circuit has previously recognized that § 1346, as written, "provides not a hint of the definition of ["honest services"]; instead, it is the case law that establishes the meaning of the vague and amorphous phrase."  *Brown*, 459 F.3d at 521 n.10.  Despite this, the Fifth Circuit

has made clear that a person has a right to those honest services provided for by state law.[7] *United States v. Brumley*, 116 F.3d at 734 ("[A] federal prosecutor must prove that the conduct of a state official breached a duty respecting the provision of services owed to the official's employer under state law.").

When determining whether a federal statute is unconstitutionally vague, a district court's analysis must first ask whether the statute at issue is one that involves First Amendment freedoms. *United States v. Gray*, 96 F.3d 769, 776 (5th Cir. 1996) (citing *United States v. Mazurie*, 419 U.S. 544, 550 (1975)). If the statute does not involve a First Amendment freedom, then the constitutionality of the statute "must be examined in light of the facts of the case at hand." *Id.* Generally, a statute is not vague where it "defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). It is less likely that a statute will be unconstitutionally vague where that statute prohibits knowing or willful conduct. *Screws v. United States*, 325 U.S. 91, 101-02 (1945). The circuits who have considered this issue in the context of § 1346 have rejected the vagueness argument. *See, e.g.*, *Gray*, 96 F.3d at 777.

As applied to the Defendants in this case, § 1346 cannot be said to be unconstitutionally vague. The Superseding Indictment alleges that Gregory Meffert, in his capacity as the Chief Technology Officer and Executive Assistant to the Mayor "was responsible for the supervision and performance of contract labor assigned," and that the other Defendants conspired with him.

---

[7]The Court is mindful of the fact that there is a circuit split regarding the definition of honest services and that some circuits do not premise the intangible right to honest services upon state law duties. *See, e.g.*, *United States v. Sawyer,* 239 F.3d 31, 41-42 (1st Cir. 2001). The Court must base its analysis in this case on the law in this circuit.

In addition, the Government pointed out at oral argument that the Mr. Meffert's own resume states that as the CTO he was responsible for securing a number of federal grants for the City of New Orleans. Thus, the Government alleges that Mr. Meffert was in a position of power and had a high level of discretion to deal with city contracts and federal funds. These allegations, if proven at trial, distinguish Mr. Meffert from the Defendants' hypothetical secretary who accepted bribes in exchange for performing ministerial duties. Additionally, there are clear allegations of self-dealing and bribery, which the Fifth Circuit has called "[t]he paradigmatic case of honest-services fraud," and allegations that the Defendants acted knowingly and willfully. *Brumley*, 116 F.3d at 734. These allegations are spelled out clearly in the Superseding Indictment, which also expressly describes the state law duties that Mr. Meffert allegedly owed to the people of New Orleans. Thus, the Government has properly asserted an honest services violation against the Defendants. The charged conduct is clearly of the type that Congress sought to criminalize with § 1346.[8]

Moreover, the Fifth Circuit has already considered, at least to some extent, the Defendants' other arguments related to unconstitutionality. They have indicated that by reading the federal statute to require employees to provide honest services in conformance with state law, they avoid a separation of powers problem. *Brumley*, 116 F.3d at 734 ("[A different

---

[8]This case can be easily distinguished from those cases cited by Defendants. The Defendants cite to no case in which a court has held that the funneling of government contracts to an individual in exchange for financial payments did not constitute honest services wire fraud. The most similar case that they point to, *United States v. Rabbitt*, 583 F.2d 1014 (8th Cir. 1978), was a case in which the Eight Circuit reversed the conviction of a state legislator who had set up meetings between the state officials who were responsible for awarding government contracts and certain individuals who were offering him a commission. *Id.* at 1026. As the Defendants point out, the Court reasoned that this conduct could not constitute an honest services wire fraud because the Defendant "did not control the awarding of the contracts." *Id.* This is clearly different from this case, where the Superseding Indictment alleges that Gregory Meffert was responsible for awarding contracts.

reading] would sorely tax separation of powers and erode our federalist structure.").  Further,

they have adopted a definition of honest services that is dependent on state law duties without

finding that § 1346 is unconstitutional.   See *Brumley*, 116 F.3d at 734.  It is not the place of this

Court to reject that reading.  Accordingly, Defendants' motion IS DENIED.

### viii)    Motion to Dismiss Count 60 - Money Laundering (Rec. Doc. 56)

Count 60 of the indictment charges the Defendants with conspiring to launder money in

violation of 18 U.S.C. §§ 1957 and 1956(h).  Defendants argue that this count should be

dismissed because the Superseding Indictment does not allege that the Defendants intentionally

disguised and/or concealed illicit funds.  They argue that the money laundering statutes are not

intended to punish money spending.  The Government has responded and takes the position that

concealment is not an element of § 1957 and 1956(h).

18 U.S.C. § 1957 makes it a crime to "knowingly engage[] or attempt[] to engage in a

monetary transaction in criminally derived property of a value greater than $10,000 and is

derived from specified unlawful activity[9]."  Additionally, conspiracy to violate § 1957 is

expressly punishable pursuant to § 1956(h) which provides that "[a]ny person who conspires to

commit any offense defined in . . . section 1957 shall be subject to the same penalties as those

prescribed for the offense the commission of which was the object of the conspiracy."

On its face, § 1957 clearly does not require that the Government allege or prove that the

Defendants acted with an intent to disguise or conceal the funds.  Additionally, the Fifth Circuit

has previously recognized the difference between a § 1957 violation and other types of money

laundering statutes which do require concealment.  *United States v. Brown*, 186 F.3d 661, 670-

---

[9]Bribery and fraud are both included within the definition of "specified unlawful activity" as used in this statute.  18 U.S.C. § 1956(c)(7)(B).

71 (5th Cir. 1999). In *Brown*, the Court noted that "[i]n a separate money laundering statute, 18 U.S.C. § 1957(a), Congress did criminalize the mere spending of 'criminally derived property that is of a value greater than $10,000' with knowledge of the unlawful source." *Id.* at 670. Thus, § 1957 stands in contrast to 18 U.S.C. § 1956(a)(1), which clearly does contain a concealment element.[10] The cases cited by Defendants in support of their motion all relate to money laundering under § 1956(a)(1), and not under § 1957. The Superseding Indictment in this case appropriately tracks the language of the statutes under which Defendants are charged. The Court will not impose a concealment element where Congress did not write one into the statute. Accordingly, Defendants' motion IS DENIED.

### B. Motion to Strike Prejudicial Surplusage from the Indictment (Rec. Doc. 53)

Defendants next argue that the Court should strike certain language from the Superseding Indictment that they argue is irrelevant to the Government's allegations and would only serve to prejudice the jury. First, they argue that Paragraph 14, which contains a list and description of certain civil law duties imposed on Louisiana public servants, should be stricken. Additionally, they argue that all so-called "code names" created by the Government should be stricken, as irrelevant and prejudicial. Specifically, Defendants object to the use of the following phrases: (1) "Deputy Mayor"; (2) "no bid"; (3) "crime cameras"; (4) "contract/consulting basis"; and (5) "an average of 6 hours per business day."

The government opposes any editing of the Superseding Indictment and argues that all language contained in the indictment is necessary to charge the offenses and to explain the

---

[10]In the context of 18 U.S.C. § 1956(a)(1), the Court has noted that it is important to avoid "turning the money laundering statute into a money spending statute." *Brown*, 186 F.3d at 670 (quotations omitted). On the other hand, it is facially apparent that § 1957 was intended by Congress to be a money spending statute.

circumstances surrounding the crimes.  The government further argues that the language at issue is not inflammatory, irrelevant, or prejudicial, and that there is no basis for the exclusion of the language.

Generally, allegations in an indictment that are unnecessary to prove the crime charged are surplusage.  *United States v. Miller*, 471 U.S. 130, 136-37 (1985).  A district court retains discretion to strike surplusage from an indictment upon motion of the defendant under Rule 7(d) of the Federal Rules of Criminal Procedure.  However, the striking of surplusage is not required: "surplusage in an indictment may generally be disregarded where the charge is not materially broadened and the accused is not misled."  *United States v. Trice*, 823 F.2d 80, 89 n.8 (5th Cir. 1987) (citations omitted).  The level of proof required to strike surplusage from an indictment is "exacting."  *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971).

A district court may strike language as surplusage on the ground that such material is unduly prejudicial if the language "serve[s] only to inflame the jury, confuse[s] the issues, and blur[s] the elements necessary for conviction[.]"  *Id.*  Moreover, a court may strike as surplusage any "[i]ndirect expressions, implied allegations, argumentative statements, and uncertainty due to generalizations in language[.]"  *United States v. Williams*, 203 F.2d 572, 574 (5th Cir. 1953).

After reviewing the Superseding Indictment, the Court finds that none of its language qualifies as inflammatory, confusing, or prejudicial. First, the Government has charged the Defendants with violations of 18 U.S.C. §§ 1343 and 1346, which together make it a crime to devise or intend to devise a scheme or artifice to defraud another of the intangible right to honest services.  Although the statute does not specify what honest services the statute applies to, the Fifth Circuit has concluded that a person has a right to those honest services provided for by state law.  *United States v. Brumley*, 116 F.3d 728, 734 (5th Cir. 1997) ("[A] federal prosecutor

must prove that the conduct of a state official breached a duty respecting the provision of services owed to the official's employer under state law."). Thus, the language contained in Paragraph 14 is clearly relevant to the Government's honest services allegations because it serves to detail precisely what honest services the Defendants owed to the people of New Orleans. Further, this language is no more than a recitation of state law duties owed, and is therefore not prejudicial.

Next, the so-called code names are relevant and not prejudicial and need not be stricken from the Superseding Indictment. First, the Government alleges that the term "Deputy Mayor" was used by Gregory Meffert to describe his level of authority within the Nagin administration. At this stage of the proceedings, the Court must accept the factual allegations contained within the superseding indictment as true. The Court cannot see how the Defendant can argue now that a phrase that he himself used in the past is prejudicial. Further, the phrase is relevant to the Defendants' ability to execute and carry out a scheme and artifice to defraud. As for the other code names, they are all relevant descriptors of the facts alleged in the indictment and are not prejudicial. Therefore, Defendants' motion IS DENIED.

**C.      Motion to Suppress Statements and/or Motion to Dismiss Count 63 of the Superseding Indictment (Rec. Doc. 60)**

Count 63 of the Superseding Indictment alleges that on or about February 29, 2009, Gregory and Linda Meffert made false statements to FBI agents who appeared at the Defendants' home for questioning. Specifically, Count 63 alleges that the Mefferts falsely informed the agents:

> that Linda Meffert had worked for Mark St. Pierre on a "contract/consulting basis" for "an average of 6 hours per business day" at the rate of $90.00 per hour in exchage for the $38,000 check received from Mark St. Pierre on or about November 9, 2004 when in fact she did not work for Mark St. Pierre.

Defendants allege that the statements made to federal agents should be dismissed because they were the result of an improper interrogation.[11]  Defendants take the position that they did not receive *Miranda* warnings prior to questioning, and that they were the victims of a perjury trap, or of otherwise improper and outrageous conduct.  The Government responds that the Defendants provided the statements voluntarily, were not in custody at the time, and that *Miranda* therefore does not apply.  Further, they argue that the Fifth Circuit law does not recognize the perjury trap doctrine, and that even if it did, the doctrine would be inapplicable here.  Finally, they argue that this questioning was part of, and related to, an ongoing federal investigation and was therefore not improper.

The law is clear that "[e]vidence gathered from custodial interrogations without prior *Miranda* warnings must be suppressed."  *United States v. Brown*, 09-73-JJB-SCR, 2010 WL 126471, at *1 (M.D. La. Jan. 8, 2010) (citing *United States v. Bengivenga*, 845 F.2d 593, 595 (5th Cir. 1988).  An individual is in custody either upon formal arrest or "when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement to a degree that the law associates with formal arrest."  *Id.*  Clearly, there was no formal arrest in this case, so the Court must determine whether an individual in the Mefferts' position would have felt that they were free to leave.  In *Brown*, the principal case relied upon by the Defendants, the Court held that an individual who had not been formally arrested was nonetheless in custody when police, in the midst of conducting a murder investigation, escorted the defendant, who was found with a gun, downstairs where they ordered him to sit on a mattress.  *Id.* at *2.  The Court, in reaching their holding, pointed to a high level of police presence in the house and the fact that the officers were in the process of making a

---

[11]Although not charged in Count 63, Mark St. Pierre has adopted this motion as well.

house safe during a murder investigation. *Id.* Further, the Court pointed out that the officers'

testimony after the incident was contradictory on whether the defendant had been free to leave.

*Id.*

In this case, which is clearly distinguishable from *Brown*, there is no doubt that the

Defendants were not in custody at the time of questioning. First, the reports filled out by FBI

agents in connection with the questioning and submitted by the Government indicate that both

Defendants provided the information voluntarily. In fact, Linda Meffert, who was questioned

outside, left of her own accord when she indicated that she was late for a meeting. Additionally,

unlike *Brown*, the statements were not taken while police secured the premises. Defendants do

not assert that the FBI agents ever suggested to either Defendant that they were not free to leave.

Finally, the Government has entered into the record two emails which were sent by the Mefferts

as follow up to their encounter with the agents. These emails offer further information regarding

questions that had been asked and confirm that the statements were provided voluntarily, were

not coerced, and were not the product of an unlawful custodial interrogation.

The perjury trap doctrine also does not provide any valid basis for suppression of the

Mefferts' statements in this case. "A perjury trap is established upon a showing that the

Government subpoenaed a witness for the primary purpose of eliciting testimony which the

Government will later prosecute for perjury." *United States v. Alvarez*, 489 F. Supp. 2d 714, 723

(W.D. Tex. 2007). Notably, the Fifth Circuit has never "recognized the perjury trap doctrine."

*Id.* Further, the perjury trap doctrine is applicable to grand jury proceedings, not questioning by

law enforcement during an investigation. *United States v. Chen*, 933 F.2d 793, 796 (9th Cir.

1991). Finally, the perjury trap does not apply where the purpose of the questioning was to elicit

information related to a legitimate investigation. *Id.* at 797. Clearly, even if the perjury trap had

been recognized in this jurisdiction, it would not apply in this case. This was not a grand jury proceeding and the questioning was related to the Meffert's financial activity and their relationship with Mark St. Pierre. This information was part of the legitimate investigation into the related charges against the Mefferts.

Finally, it cannot be said that the questioning of the Mefferts was so outrageous and improper as to constitute a violation of the Defendants' due process rights. As discussed, the information was elicited voluntarily as part of an ongoing investigation related to the Mefferts' financial affairs. Such an inquiry is clearly lawful. No evidentiary hearing is necessary to reach this conclusion. Accordingly, the Defendants' motion IS DENIED.

**D.     Motion for Judge Trial, or in the Alternative, for Change of Venue (Rec. Doc. 96)**

The Mefferts next point to the significant publicity that has surrounded Gregory Meffert since his time at City Hall.[12] Much of this publicity was negative and included stories about Mr. Meffert's personality, his resignation, the civil trial that took place in Orleans Parish, and the instant case. Accordingly, the Mefferts now argue that this publicity has saturated the community from which the jury pool will be drawn and that this taint will prevent the selection of an impartial jury. In order to avoid any prejudice created by the negative publicity in this case, Defendants have waived their right to a jury trial and now request that the Court conduct a bench trial in this matter. Alternatively, they ask that the Court transfer this case to a venue that will be free of the taint caused by the publicity of this case. The Government has responded and opposes this motion. They point out that the requested remedies are used only in extreme cases and are not necessary here.

---

[12]Although Mr. St. Pierre has not adopted this motion, the Mefferts have indicated that he does not oppose a bench trial or a transfer of venue.

The Defendants, in this case, have a constitutional right to be tried by a jury of their peers. Where this is the case, Rule 23 of the Federal Rules of Criminal Procedure provides that a defendant must be tried by jury unless both the government and the court consent to the defendant's written waiver of the right to jury trial. In certain rare circumstances, courts have granted a bench trial to a defendant over the Government's objection. *See, e.g.*, *United States v. Panteleakis*, 422 F. Supp. 247, 248 (D.R.I. 1976) ("At the least it can be concluded that [Supreme Court case law] suggests an exception to Rule 23 when 'passion, prejudice, or public feelings', would deny an accused a fair and impartial trial."). In *Panteleakis*, the Court reasoned that the complexity of the case would prejudice any jury and therefore ordered a bench trial. *Id.* at 250. However, "[c]ompelling circumstances are not demonstrated simply by claims of an atmosphere poisoned by a negative press." *United States v. Sun Myung Moon*, 718 F.2d 1210, 1218 (2d Cir. 1983).

Alternatively, the Mefferts ask that the Court transfer this case to another venue pursuant to Rule 21(a) of the Federal Rules of Criminal Procedure, which provides that "[u]pon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." However, Rule 21(a) is rarely satisfied because the alleged taint must "so saturate the community jury pool as to render it virtually impossible to obtain an impartial jury." *United States v. Smith-Bowman*, 76 F.3d 634, 637 (5th Cir. 1996).

In this case, the Defendants have failed to demonstrate that they will be unable to receive a fair jury trial in this venue. Although the Superseding Indictment contains 63 counts against three defendants, it is not overly complicated. It is a fairly typical public corruption case.

Unfortunately, juries in this district are asked to deal with similar issues all too often. Additionally, the Supreme Court has explained, "[t]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). The jury pool in this case will be drawn from 13 parishes. Defendants' alleged conduct in this case, as well as the media attention surrounding it, largely occurred in only one of these parishes. Therefore, a substantial portion of the jury pool will likely have had only limited exposure to any facts of this case. The Court is convinced that it will be able to assemble an impartial jury panel through a well-executed voir dire, and Defendants' motion is therefore DENIED.

**E.     Motions to sever and/or bifurcate the proceedings**

**i)     Motion to Sever Tax Counts (Rec. Doc. 59)**

Defendants next argue that the Court should sever Counts 61 and 62 ("the tax counts") of the Superseding Indictment and try them separately from the other counts.[13] They take the position that the tax counts are not related to the rest of the Superseding Indictment and that the Defendants would be unfairly prejudiced by the joinder of the tax counts. The Government, on the other hand, argues that the alleged unreported income upon which the tax counts are based was the very same income that was involved in the honest services, bribery and fraud counts. Additionally, they assert that joinder of these counts will not lead to a manifestly unfair trial. Finally, they claim that any prejudice to the Defendants does not outweigh the

---

[13]Even though the tax counts are only asserted against the Mefferts, Mark St. Pierre has adopted this motion as well.

public's interest in the judicial economy afforded by joinder.

Joinder of offenses and/or defendants in a criminal matter is governed by Rule 8 of the Federal Rules of Criminal Procedure, which provides that:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged - whether felonies or misdemeanors or both - are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a). The law in the Fifth Circuit is clear that joinder of tax counts with other counts, such as fraud counts, is permissible where at least "some of the unreported income was the fruit of the mail fraud scheme." *United States v. Yefsky*, 994 F.2d 885, 895 (5th Cir. 1993); *see also United States v. Coppola*, 788 F.2d 303, 307 (5th Cir. 1986); *United States v. Box*, 50 F.3d 345, 358 (5th Cir. 1995). In this case, the Government argues in their response to Defendants' motion to sever that the unreported income was the same money that was the proceeds of the Defendants' other alleged illegal activity. Although the Superseding Indictment does not explicitly assert that the unreported income tax funds were illegally derived, it is clear from the nature of Superseding Indictment that the unreported funds were derived from the overarching conspiracy alleged therein.[14] Where, as here, this connections exists, it is appropriate to try the tax counts and the fraud and bribery counts together.

Additionally, Rule 14 of the Federal Rules of Criminal Procedure allows a court to sever counts from an indictment in order to avoid prejudice to either party. As Rule 14 makes clear, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of

---

[14]The Government need not prove that the unreported income was illegally derived to obtain a conviction on the tax counts.

counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Rule 14 gives discretion to the district court when considering a severance based upon prejudice to either party. *Id.* The Defendants have not cited to any case in which a court severed tax counts to avoid prejudice where the unreported income was the proceeds of the other charged activity. Additionally, because the tax counts are related to the rest of the charged conduct, any potential prejudice to the Defendants is outweighed by the public's interest in judicial efficiency. Defendants' motion IS DENIED.

### ii) Motion to Bifurcate Forfeiture (Rec. Doc. 55)

The Superseding Indictment contains a Notice of Fraud Forfeiture and a Notice of Money Laundering Forfeiture, both of which allege that the Defendants, as a result of the charged conduct, must forfeit to the United States any and all property, real or personal, which was derived from the charged conduct. The Defendants argue that they are entitled to a separate trial by jury regarding the forfeiture issues. The Government has responded and asserts that bifurcation of these proceedings happens automatically, that the Court should determine prior to the bifurcated proceedings whether a jury is necessary, and that these motions should therefore be denied.

Forfeiture proceedings are governed by Rule 32.2 of the Federal Rules of Criminal Procedure. Rule 32.2(b)(1)(A) provides that:

> As soon as practicable after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute.

Additionally, Rule 32.2(b)(5) provides that:

> In any case tried before a jury, if the indictment or information states that the government is seeking forfeiture, the court must determine before the jury begins

> deliberating whether either party requests that the jury be retained to determine
> the forfeitability of specific property if it returns a guilty verdict.

Thus, the parties do not dispute that the Defendants are entitled to a separate proceeding to determine forfeiture and that they have a right to a jury determination on the issue. Instead, they dispute whether this motion is necessary to accomplish the relief sought. The Court will deal with this issue at the completion of the guilt phase of the trial. This motion is therefore DENIED AS MOOT.

## III. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants' motions (Rec. Doc. Nos. 36, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, and 96) are all DENIED.

New Orleans, Louisiana, this __7th__ day of __June__, 2010.

_____
United States District Judge